```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
```

**UNITED STATES OF AMERICA,**

               Government,

                                       **MAGISTRATE JUDGE DAVID GRAND**

    v.

                                         **No. 20-30270**

**DAMONE KEITH ADAMS,**

               Defendant.

_____/

**ARRAIGNMENT HEARING**

**Friday, July 31, 2020**

-   -   -

APPEARANCES:

For the Government:               EATON BROWN, ESQ.
                                 Assistant U.S. Attorney


For the Defendant:                DAVID THOLEN, ESQ.

-   -   -


*To Obtain Certified Transcript, Contact:*
*Ronald A. DiBartolomeo, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 1067*
*Detroit, Michigan  48226*
*(313) 962-1234*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

1                              I   N   D   E   X

2                                                              Page

3     Arraignment hearing                                          3

4

5

6

7

8

9

10

11

12

13

14

15

16                          E   X   H   B   I   T   S

17     Identification                          Offered      Received

18

19                        N      O      N      E

20

21

22

23

24

25

                  *20-30270; USA v. DAMONE KEITH ADAMS*

1                                    Detroit, Michigan

2                                    Friday, July 31, 2020

3

4                             -     -     -

5              **THE CLERK:**  Court calls Case Number 20-30270,

6       United States of America versus Damone Adams.

7              **MS. BROWN:**  Good afternoon, your Honor.

8       Eaton --

9              **THE DEFENDANT:**  It is Damone by the way.

10             **THE CLERK:**  Sorry.

11             **THE DEFENDANT:**  No problem.

12             **THE COURT:**  Go ahead.

13             **MS. BROWN:**  Eaton Brown for the United

14      States, your Honor.

15             **THE COURT:**  Thank you.  Good afternoon.  And

16      sir, before we go any further, I need to advise you of

17      certain rights that you have.

18             You have the right to remain silent, which means

19      you don't need to say anything to me, or answer any

20      questions that anyone asks of you.  Anything that you say

21      can be used against you, you understand that?

22             **THE DEFENDANT:**  Yes, sir.

23             **THE COURT:**  Can other people see the

24      defendant?  I'm not able to see him.  I hear him just

25      fine.

1           **MR. THOLEN:**  I can see him, Judge.  I don't

2      know if he needs to leave the break out room.  Is that

3      possible?

4           **THE CLERK:**  He's out of the break out room.

5      I'm looking at him.

6           **THE COURT:**  I don't see him.  I see -- the

7      only people that I see is Mr. Flanagan, Ms. Brown and Mr.

8      Tholen.

9           **MR. THOLEN:**  We can all see Mr. Adams, Judge.

10          **THE COURT:**  All right.  Any problem if we

11     begin, and if anything comes up, you'll just wave and let

12     me know.

13          **THE CLERK:**  Yes.

14          **MR. THOLEN:**  Yes.

15          **THE COURT:**  Sir, as I was saying, you have

16     the right to remain silent.  You don't need to say

17     anything or answer any questions, and anything that you

18     say can be used against you, you understand that?

19          **THE DEFENDANT:**  Yes, sir.

20          **THE COURT:**  All right.  You also have the

21     right to the assistance of an attorney at all critical

22     stages in your case, including any time authorities

23     question you, and any time you are in court, you

24     understand that?

25          **THE DEFENDANT:**  Yes, sir.

*20-30270; USA v. DAMONE KEITH ADAMS*

1  **THE COURT:**  All right.  Thank you.  Are you

2  asking the Court appoint an attorney to assist you in this

3  matter?

4  **THE DEFENDANT:**  Yes, sir.

5  **THE COURT:**  All right.  I'll appoint the

6  Federal Community Defender Office.

7  **MR. THOLEN:**  Thank you, your Honor.  For the

8  record, David Tholen of that office.

9  I did have the opportunity in the breakout room to

10  speak with Mr. Adams.  We reviewed the nature of his case.

11  He also has been provided a copy of the indictment from

12  North Dakota.  I did explain to him the general nature of

13  removal proceedings, and the process that he's entitled to

14  in this district, and he indicated that he does understand

15  that, Judge.

16  **THE COURT:**  All right.  Thank you.  Will he

17  be waiving any of his Rule 5 rights in terms of an

18  identity hearing or other rights that he has under those

19  rules?

20  **MR. THOLEN:**  Well, at this point, Judge, we

21  have not made a final determination about that.  I think

22  the only -- because it is an indictment, the process he

23  would be entitled to would be the identity hearing alone.

24  We do wish to pursue bond in this matter, and so I

25  goes we would like to take that up first.

*20-30270; USA v. DAMONE KEITH ADAMS*

1          **THE COURT:** All right.  Well, before we go

2     any further, let me just put a few things on the record.

3          First sir, we are appearing by Zoom because our

4     courthouse is closed to in-person proceedings, but I have

5     been able to hear you during this whole time and ask you

6     questions, and you have answered them, and obviously you

7     have been able to hear as well.  Do you consent to

8     proceeding over Zoom?

9          **THE DEFENDANT:** Yes, sir.  No problem.  Not

10    at all.

11         **THE COURT:** Okay.  Great.  If there is any

12    time you don't hear what's being said, speak up, and we'll

13    make sure we call on you.

14         **THE DEFENDANT:** Yes.

15         **THE COURT:** The next reason that you're here

16    is that an indictment has been issued out of the District

17    of North Dakota against somebody with your exact name, and

18    the allegation is that that indictment is against you, and

19    it charges various narcotic trafficking crimes, and gun

20    crimes.  And so that's why you're here, because charges

21    those charges are being made against that person, and that

22    claim is that it is you.  Do you understand all of that?

23         **THE DEFENDANT:** Sort of.  A lot of this don't

24    even have nothing to do with me.  I understand what's

25    going on, but I never seen no gun, honestly.  I've seen a

*20-30270; USA v. DAMONE KEITH ADAMS*

1    lot of stuff --

2              **MR. THOLEN:**  Your Honor, if I might

3    interject.  Mr. Adams and I discussed this, and I

4    explained to him, without getting into the details or the

5    factual allegations, that the main point is that North

6    Dakota believes that he and the other named individuals

7    were involved in various federal crimes.  He did indicate

8    to me that he understood that.  Obviously, he may not

9    agree with every allegation in the indictment, nor should

10   he.

11             **THE DEFENDANT:**  I apologize.  I didn't

12   mean --

13             **THE COURT:**  You don't have to apologize.  I

14   want to make sure you understand what's going on, and what

15   your rights are.

16        So I think you understand that, you know, there

17   are charges being made in the North Dakota Federal

18   District Court against somebody with your name, and

19   they're claiming that's you.  I have no idea if it is or

20   isn't, but that's why you're here.  So you understand at

21   least that much?

22             **THE DEFENDANT:**  Okay.  Yes, sir.  Yes, sir.

23   I apologize.

24             **THE COURT:**  That's okay.  And you also have

25   certain rights being accused of being that person.

*20-30270; USA v. DAMONE KEITH ADAMS*

1          Number one, you have the right to what's called an

2     identity hearing, where government would have to show that

3     you are, in fact, the person that is the subject of that

4     indictment.  So that's one right that you have.

5          You also have the right to have a bond hearing

6     before me or a judge of you our court as to whether you

7     ought to be released pending the resolution of your case.

8          Those are the rights that you have at the present

9     time.  And Mr. Tholen, it sounds to me like you need

10     additional time with this individual to explore those

11     rights, and whether he might wish to contest identity, et

12     cetera, is that correct?

13          **MR. THOLEN:**  Yes.  With respect to the

14     identity hearing, I would like more time.  With respect to

15     the bond issue, I'm ready to proceed now on that.

16          **THE COURT:**  Let me hear from the government.

17     Is the government seeking detention with respect to this

18     individual?

19          **MS. BROWN:**  Your Honor, we are seeking that

20     the detention hearing be set for Monday, please.

21          **THE COURT:**  All right.  And is Monday the

22     first day that you're able to go forward?  You are not

23     able to go forward today?

24          **MS. BROWN:**  Yes, your Honor.  Your Honor,

25     under the statute we're entitled to that amount of time as

*20-30270; USA v. DAMONE KEITH ADAMS*

1    well.

2              **MR. THOLEN:**  I understand the government's

3    request, but could I place some comments on the record

4    before the Court makes a final decision on that request?

5              **THE COURT:**  Go ahead.

6              **MR. THOLEN:**  Obviously, this was a, quote,

7    late arrest, and I have had the opportunity to speak with

8    Mr. Adams after 1:00.  However, it is my understanding

9    that he was arrested at a specific address that's known to

10   be his address in Detroit, Michigan around 10:30 or 11

11   today.  He lives with the mother of his child, and they

12   have together a seven month old son.

13        What's significant is that the mother of his child

14   is also on this indictment, and the mother of his child

15   has appeared -- apparently she's been contacted first.

16   She appeared, and has been granted bond on this case from

17   North Dakota through a Zoom proceeding.

18        Mr. Adams' had attorney Danny Blank from Detroit

19   contact North Dakota and the U.S. Attorneys Office to try

20   to make arrangements for a self-surrender, or to find out

21   if he they were looking to have him appear in North Dakota

22   either personally or through a Zoom proceeding, and they

23   never got back with any clear date, or any decision that

24   something needed to be done.

25        Mr. Adams, as I understand, was fully cooperative

*20-30270; USA v. DAMONE KEITH ADAMS*

1    when he was arrested at his residence today.  He

2    identified himself by his true name.  He did not resist or

3    struggle with the officers that were placing him under

4    arrest and, you know, on top of everything else, his

5    birthday is this Sunday.

6         I understand fully that the government has the

7    statutory right to ask for three days.  Monday is not even

8    within the full three days, but I think there are some

9    circumstances in this case that might warrant at least

10   starting this hearing, or perhaps the government might

11   reflect and change its position.

12        It is my understanding that the only prior

13   criminal conviction was for a 2012 domestic violence case,

14   for which Mr. Adams got probation and it was discharge

15   from probation.

16        And so, a lot of these things can be verified

17   pretty easily, and I understand the allegations in the

18   North Dakota indictment are serious, but I think it is

19   significant that a co-defendant has been placed at a

20   residence with Mr. Adams already, and he's not trying to

21   hide or trying to flee, and I just want to make that pitch

22   on his behalf, Judge.

23        **THE COURT:**  All right.  Let me ask, has

24   Pretrial Services interviewed the defendant at this point?

25        **THE DEFENDANT:**  Yes, sir.

*20-30270; USA v. DAMONE KEITH ADAMS*

 1          **PRETRIAL SERVICES:**  Good afternoon, your

 2     Honor.  The defendant was interviewed, but Pretrial

 3     Services wouldn't advise the government would be seeking

 4     detention, and we'll have a written report for the

 5     detention hearing.

 6          **MS. DELI:**  Your Honor, Susan Deli from

 7     Pretrial Services.  I had the opportunity to speak with

 8     Mr. Adams.  I also interviewed and spoke with his mother.

 9     The information that I received from Mr. Adams and his

10     mother, and also conducting a criminal history check,

11     leads me to believe that there are conditions that

12     Mr. Adams could be released on that would satisfy the

13     risk -- the concerns of risk.  However, I did not take

14     factor the charges against him.  So to be frank, we would

15     recommend release today based upon the information that we

16     received from our initial investigation.

17          **MS. BROWN:**  Your Honor, if I may?

18          **THE COURT:**  Yes.

19          **MS. BROWN:**  The situation is we're not asking

20     for Monday because we can.  We are asking for it because

21     one, it is an out of district case.  So we need time to

22     compile the information, not all of which we've received

23     from AUSA.

24          Secondly, the fact that he was found with the

25     mother of his child in a house -- I mean, I can't really

                  *20-30270; USA v. DAMONE KEITH ADAMS*

1     speak as to whether or not she violating her bond

2     conditions by doing that, but perhaps nobody knows that

3     they are together.

4          In any event, when they went to find him, he said

5     to the arresting agent that he was aware that he was

6     wanted, and he was asked to surrender, and he declined to

7     do so because he knew how much jail time he was facing.

8          **THE DEFENDANT:**  Excuse me, ma'am.  That's --

9          **MS. BROWN:**  -- I'm going upon the

10    recommendation of the AUSA, but I think when I spoke with

11    the officers who arrested the defendant, I think that

12    information is certainly pertinent for the Court to

13    consider when weighing whether or not to release him.

14         **MR. THOLEN:**  Judge, obviously -- I'm sorry.

15         **THE COURT:**  Go ahead.

16         **MR. THOLEN:**  May I respond to that?

17         **THE COURT:**  Yes.

18         **MR. THOLEN:**  Obviously, I haven't seen that

19    in any document because no reports of any arrests have

20    been provided, but I will take Ms. Brown at her word, but

21    I think that information or statement -- or that alleged

22    statement can certainly be taken into consideration with

23    the fact that Mr. Adams took this matter seriously enough

24    to have a very respected long time practitioner in

25    Detroit, Daniel Blank, who has represented Mr. Adams in

*20-30270; USA v. DAMONE KEITH ADAMS*

1    the past, reach out as a professional to the U.S.

2    Attorneys Office in North Dakota to arrange, or to find

3    out how they wanted to handle this, and that office did

4    not respond to Mr. Blank.

5          So this is not a situation where Mr. Adams blew

6    this situation off, or was trying to hide out from the

7    situation.  He did the most responsible thing, which is

8    getting an attorney to make some calls on his behalf, and

9    to try to follow through with this.

10          So, you know, when I think the relevance for the

11   fact that a co-defendant, the mother of his child, is on

12   bond to that very address, obviously that's all known to

13   the North Dakota Prosecutor's Office and the North Dakota

14   court, and I suspect if they did any kind of pretrial

15   investigation, she revealed that she has a seven month old

16   son with Mr. Adams, the defendant before your Honor now,

17   which also means they know that Mr. Adams is residing with

18   her at that residence.

19          So, you know, I guess what I'm asking the Court,

20   and it's a little bit unusual, and I understand that the

21   U.S. Attorney's Office in Detroit is acting in concert

22   with the information they are getting from U.S. Attorney's

23   Office in North Dakota, and that's what they

24   professionally do, you know, I would ask if this Court

25   would consider that we started this hearing, and certainly

*20-30270; USA v. DAMONE KEITH ADAMS*

1   if the government -- anything the government wants to add,

2   we can continue this hearing to Monday, and I would ask

3   this Court consider releasing Mr. Adams on any conditions,

4   GPS electronic tether, anything the Court thinks is

5   necessary.  We are talking about approximately 48 hours,

6   and yet, it seems to me inappropriate -- we've heard from

7   Ms. Deli from Pretrial Services that he does not have a

8   significant prior record, or anything that alarmed

9   Pretrial Services that he should be detained, and it makes

10  me think that it would be highly unfortunate to detain

11  Mr. Adams in this set of circumstances over the weekend

12  just to possibly have him released on Monday.

13       Fortunately, Pretrial did do an interview.  It's

14  been able to review LIEN, the criminal records.  I think

15  there's a lot of information here, and certainly the

16  government is well within its right to ask for additional

17  time, but I think there is no reason we can't start

18  hearing now.

19       **THE COURT:**  All right.  Why don't we -- first

20  of all, I want to put on the record I just read through --

21  each district does their indictment a little different.

22  So they look a little different.

23       My understanding, Ms. Brown, looking through this

24  indictment, this defendant is not facing a gun charge.  Am

25  right about that?

*20-30270; USA v. DAMONE KEITH ADAMS*

1              **MS. BROWN:**  It appears not, correct.

2              **THE COURT:**  Okay.  So number one, I want to

3       clarify that because initially when I had advised him of

4       the general nature of the indictment, I did not realize

5       that he was not part of the gun charge, and in fact, he

6       said that, you know, he didn't know anything about a gun.

7       So I just want to point that out.

8              You know, it is only 2:00 right now.  I think we

9       don't have much more on our docket today.  Based on what

10      I'm hearing, and especially based on the COVID situation,

11      it seems very likely that based on what I've heard, that

12      the defendant is candidate for bond.

13             I base that on his lack of significant criminal

14      history; the fact that the charge against him does not

15      involve a firearm, which typically is what causes, you

16      know, the most amount of concern; the fact that his

17      co-defendant wife is already released on bond, and they

18      have baby.

19             So I'm very much inclined to at least release him

20      on bond, even if it means that we continue the detention

21      hearing until Monday.  Put him on a GPS tether, and he'll

22      be back Monday for that.

23             I also base this on many cases that we have like

24      this that originate out of state, where they may have a

25      different way of doing things that we do in terms of what

*20-30270; USA v. DAMONE KEITH ADAMS*

1    their -- you know, I don't know how they view risk of

2    flight, risk of danger and that, although I do note they

3    release the other defendant on bond.

4         Anyway, I guess what I propose is that we

5    reconvene at 4:30.  I think that would give the government

6    plenty of time really find out if there's anything that,

7    you know, significantly differs from what we've heard that

8    would suggest the defendant is such a flight risk or such

9    a danger, that it cannot be addressed through a GPS

10   tether, home incarceration, whatever we need to do,

11   whether it's temporarily or for his regular bond

12   conditions.  And that will also give Pretrial Services to

13   do some further investigation and thought, and we'll

14   reconvene at 4:30, and I'll hear from both sides, and make

15   a call at that time as to how we will proceed.  How does

16   that sound?

17            **MS. BROWN:**  Thank you, your Honor.

18            **MR. THOLEN:**  Thank you, Judge.

19            **THE CLERK:**  Can we check with the marshals

20   regarding that time?

21            **THE MARSHAL:**  I have the transport here

22   waiting to take these guys back.  So is it possible to

23   hold the hearing from the Midland County Jail?

24            **THE DEFENDANT:**  Sir, I'm downtown.  They came

25   and searched my house.  I didn't argue.  That's my

*20-30270; USA v. DAMONE KEITH ADAMS*

1     mother's home.

2                 THE COURT:  Wait a second, sir.  Is there --

3     when are they going to be leaving?  Is that Ed?

4                 THE MARSHAL:  Yes, sir.  They are waiting

5     now.  They are on the curb waiting.

6                 THE COURT:  Well, I don't know.  I mean, I

7     really don't want -- Midland is two hours away due north.

8     I mean, he's probably 10 minutes from his house.

9           Ms. Brown, do you want to make a quicker phone

10    call, and see if there's anything significant based on

11    what I said about how I'm leaning?

12                MS. BROWN:  Your Honor, I can ask for the,

13    you know, paperwork.  Some of it has just come in since

14    we've been in court, and I can look it over.  I mean --

15                THE COURT:  Let's take a 15 minute recess on

16    this matter.  I'm really inclined, based on what I've

17    heard, to release him on a bond, and I wouldn't want him

18    to sit in jail over a weekend, and I don't want him to go

19    two hours in the wrong direction for nothing.  So --

20                MS. BROWN:  Your Honor, may I say one thing

21    that may influence your decision?

22          They -- the AUSA feels so strongly, he has asked

23    me to stay the Court's decision so they can appeal it to a

24    judge in North Dakota if you are incline to release him.

25    I'm just letting you know they let me know that.

                    *20-30270; USA v. DAMONE KEITH ADAMS*

1          **THE COURT:**  Based on what?

2          **MS. BROWN:**  Based on the fact that they don't

3     agree with your decision.

4          **THE COURT:**  Okay.  So this is the problem,

5     though, is that the government in certain cases, it seems

6     they are not paying careful enough attention to the

7     factors and the evidence, and the fact they can ask for a

8     stay, doesn't mean it should just happen, and the

9     government should have to provide detailed information and

10    evidence about why the Court's decision is incorrect, and

11    why there is clear and convincing evidence that there is

12    no combination of conditions that could reasonably assure

13    the community's safety or his risk of flight, and least so

14    far, I have not heard anything that would suggest that.

15    At this point all I've heard is that he is charged with a

16    drug trafficking crime.

17          So you know --

18          **MS. BROWN:**  Your Honor, I'm just telling you

19    that's what they intend to do.

20          **THE COURT:**  But you're just not the messenger

21    though in this.  You're the attorney in this court, and

22    you know, what happens is, I do what I'm suppose to do and

23    follow the law, and then a person ends up going to -- you

24    know, take however long, and then the last time we did

25    this, the judge in other district just released him right

*20-30270; USA v. DAMONE KEITH ADAMS*

1     away, and it was just a complete waste of time.

2            So maybe talk about it with the other attorney

3     from the other district and say, you know, the Judge

4     really wants to hear some evidence that is clear and

5     convincing standard being met.  That might be a good use

6     of the time that we're going take this short recess.

7                   MS. BROWN:  Happy to do that, your Honor.

8                   THE COURT:  All right.  So let's take a 15

9     minute recess on this case.

10            Are you handling any other cases that we have?

11                  MS. BROWN:  I am, your Honor.  I'm handling a

12    matter with Ms. Gardey.

13                  THE COURT:  Are we ready to do that one?

14                  THE CLERK:  We are, your Honor.

15                  THE COURT:  Is this a detention hearing also?

16                  MS. BROWN:  It is.

17                  THE COURT:  All right.  How much time do you

18    need to talk to the AUSA in North Dakota and explain all

19    the circumstances that we just discussed and then to get

20    back to me?

21                  MS. BROWN:  I have not tried to call him by

22    phone.  So I would have to, you know, call him now, and

23    then, you know, provide he answers.  I think he was

24    anticipating the hearing would be Monday.  So if he's

25    available, as soon as get off the -- you know, stop the

*20-30270; USA v. DAMONE KEITH ADAMS*

1    hearing, I'll be happy to talk to him.

2                    THE CLERK:  Judge, if I may.  Mr. Tholen

3    still needs to meet Patrick Johnson.  If you wanted to

4    recess for a moment, I can ask that Mr. Tigner leave the

5    room, and Patrick Johnson come in, and Mr. Tholen and him

6    can meet.  Ms. Brown can make the calls, and then when we

7    do reconvene, we'll be ready to go on everything.

8                    MR. THOLEN:  Judge, I'm fine with that.  I

9    appreciate Aaron's suggestion.

10                    THE COURT:  All right.  These fine.  We'll

11   take -- do you think 10 minutes is enough time with the

12   other individuals, Mr. Tholen?

13                    MR. THOLEN:  I do, Judge.

14                    THE COURT:  All right.  We'll take a 10

15   minute recess.

16

17                    (Recess taken.)

18

19                    (Proceedings resumed.)

20

21                    THE CLERK:  Your Honor, recalling Case Number

22   20-30270, United States of America versus  Damone Keith

23   Adams.

24                    THE COURT:  The government indicated that

25   they were going to be seeking detention.  I heard from

                    *20-30270; USA v. DAMONE KEITH ADAMS*

1    Pretrial Services that they were prepared to release Mr.

2    Adams on bond, and then Ms. Brown was going to follow up

3    with her colleague in North Dakota to get additional

4    details.  Go ahead.

5            **MS. BROWN:**  Thank you, your Honor.

6            So just by way of factual background, a couple of

7    things that I would indicate to the Court.  This is a

8    presumption case.  The mandatory minimum on Count 2 is a

9    20 year mandatory minimum, and given the nature and the

10   weight of the controlled substances that the defendant was

11   distributing in Count 1, that also again makes it a

12   presumption case.

13           By way of facts, the defendant is a Detroit based

14   distributor of drugs who uses interstate shipping and

15   other means to transport oxycodone, 30 milligrams pills,

16   Fentanyl and heroin from Detroit to North Dakota, which he

17   distributed primarily on the Fort Berthold Indian

18   Reservation in Bismarck, North Dakota.

19           He is able to direct others to distribute the

20   opioid drug and communicate with them primarily via Face

21   Time, meaning he can conduct this business from the

22   comfort of his own home.

23           He transports or uses various means of transport

24   car, train, airline and commercial carrier.

25           If the Court would like, I can proceed to argument

*20-30270; USA v. DAMONE KEITH ADAMS*

1   now based on my conversation with the AUSA of North

2   Dakota.  Would you like proceed to argument?

3            **THE COURT:**  I want to be clear of what's

4   taking place here.  Is this the detention hearing at this

5   point, or is the -- or are you just explaining reasons you

6   need Monday to hold the detention hearing because that's

7   what the government asked for initially?

8            **MS. BROWN:**  Well -- well, my understanding is

9   that the Court wanted to proceed, but -- with the

10  detention hearing.  That's what I was doing because the

11  Court was going to deny our request for a continuance of

12  one day to Monday, but if misunderstood --

13           **THE COURT:**  I wasn't necessarily going -- I

14  did not say that I was denying your request.  I wanted to

15  see what the factual basis was A, for the request and B,

16  for the request to have the additional time, and then C,

17  to get a better understanding of what are the facts here

18  such that we would have a better idea of the overall

19  situation.

20           So, you know, if the government, you know, wants

21  until Monday to hold the hearing, and based on what you

22  have said about additional factual details, you know, I

23  guess I don't know that is, you know, inappropriate given

24  it is 2:30 now.  And you know, on the other hand, if the

25  government after looking at it was of a different mind set

*20-30270; USA v. DAMONE KEITH ADAMS*

1    that it might not be seeking detention, you know, that

2    would be a different situation.

3         So the government is still seeking detention?

4              **MS. BROWN:**  That's correct, your Honor.

5              **THE COURT:**  All right.  And does the

6    government want until Monday to fully prepare for the

7    detention hearing in this matter?

8              **MS. BROWN:**  That would be our preference, but

9    if the Court, as indicated previously, was inclined to

10   release him -- I mean, our preference would be to wait

11   until Monday so that we can, you know, be fully prepared.

12   Like I say, all of the salted paperwork came through while

13   I was in court.  So I had chance briefly look it over.

14        But I will tell you a couple facts that have come

15   came to attention that might alleviate your concerns about

16   holding him, and that is when I spoke with the AUSA just

17   know, he informed me both -- that both the lawyer,

18   Mr. Blank, called out and spoke to the U.S. Attorney for

19   North Dakota directly, who informed Mr. Blank that his

20   client needed to turn himself in.  And then the next day,

21   the defendant called the AUSA directly, and they had a

22   conversation, and the AUSA told the defendant he needed to

23   turn himself in.

24        So there was no question in Mr. Adams' mind --

25   this was July 1st and July 2nd -- that for the last almost

*20-30270; USA v. DAMONE KEITH ADAMS*

1     a month he has been wanted.

2             **THE DEFENDANT:**  Ma'am, that is a lie.  Ma'am,

3     that is a lie.  People told me they would return my phone

4     call and never did.

5             **MR. THOLEN:**  Mr. Adams, you shouldn't say

6     anything.

7             **THE COURT:**  Wait a second, sir.

8             Okay.  I'm going -- I am going to, you know, grant

9     the government's request to have until Monday to hold the

10    detention hearing.  I really don't want to do that.  My

11    strong inference is based on what I have heard, and what

12    my gut reaction is to it all is that bond very much an

13    appropriate in this case, and I really hate to have

14    somebody in custody even over the weekend when I get that

15    feeling.

16            On the other hand, I think that there are -- have

17    been some questions raised by the government from an

18    evidentiary perspective that the defendant obviously very

19    strongly disagrees with.  You know, the government is

20    making certain assertions about phone calls and things

21    like that.  And I guess I just also think that it might be

22    in the defendant's best interest to allow his attorney

23    here to work with him between now and Monday to be able to

24    put all of their ducks in a row, their best foot forward

25    to hold that hearing, and it might also lead -- I would

1    hope it would lead to a conversation between the

2    government counsel and the defense counsel in conjunction

3    with the Pretrial Services recommendation, and hopefully

4    lead to an agreement on bond conditions once everyone can

5    maybe get a little more on the same page about what did

6    and did not happen.

7          And it just strikes me that's information that the

8    government is entitled to fully explore.  I just want them

9    to fully explore it, and then react in good faith.  And

10   I'm not pointing the finger right now when I say good

11   faith at all to Ms. Brown.

12         My concern is in these cases that we have in other

13   districts, where it seems like in our district, the person

14   would very clearly be released where the government would

15   not even seek detention, and then because a AUSA is like

16   nameless, faceless AUSA in some other jurisdiction says we

17   want to appeal, or we want him detained, we go through all

18   of this, and frankly it's just not fair.  It's not fair to

19   the defendant if that's how it happened.

20         Now if it is supported by evidence, and there's,

21   you know, a reasonable argument that clear and convincing

22   evidence shows him to be a danger, or a preponderance of

23   the evidence shows him to be a flight risk, and it could

24   be reasonably be argued either way, you know, then

25   absolutely that is fine.

*20-30270; USA v. DAMONE KEITH ADAMS*

1         But I've just seen a lot of cases where it seems

2    like in our court that standard very clearly is not met,

3    and yet, we have to transport the defendant all over the

4    United States just to get to the other location, and more

5    often than not be released there anyway once they are in

6    front of that district judge there.

7         So I really just want to prevent that from

8    happening, and if taking this weekend to allow further

9    development, further discussion that could potentially

10   result in that kind of an outcome, that would be a much

11   better outcome for the defendant than for me to release

12   him right now, have the government appeal, and then have

13   him shipped to North Dakota, and probably take three plus

14   weeks to get him there.

15        So I will grant the government's motion for a

16   continuance of the detention hearing until -- well, to

17   hold the detention hearing on Monday.  And just so it is

18   clear, I won't be the one holding the detention hearing.

19   I'm just granting the government's motion to hold the

20   detention hearing on Monday, and entering an order of

21   temporary detention until that time, and again, hopefully

22   you all can work out a resolution that makes sense for

23   everybody.  Thank you.

24             **MR. THOLEN:**  Judge?

25             **THE COURT:**  Yes.

                *20-30270; USA v. DAMONE KEITH ADAMS*

1          **MR. THOLEN:**  I'm sorry.  It's David Tholen on

2    behalf of the defendant.

3          Your Honor, I understand everything that the Court

4    just said.  I would ask -- it appears that there have been

5    bond arguments made.  I know that I've made bond

6    arguments, and I believe I've heard Ms. Brown make

7    detention arguments, as well as make a request to have the

8    detention hearing set over to Monday.

9          I would ask if this Court would consider that the

10   hearing has been started.  Certainly, I have no objection

11   to the hearing being continued until Monday, but if the

12   Court would make that type of finding, I think that does

13   allow the Court to consider potential release between now

14   and Monday.  And for all the reasons I argued earlier, I

15   ask the Court to consider releasing this defendant on bond

16   with the most restrictive conditions possible, and that we

17   reconvene Monday to make a final determination about bond

18   or detention in this matter.

19          **MS. BROWN:**  May I respond?

20          **THE COURT:**  You don't need to.  You know, I

21   appreciate that request.  I appreciate you advocating for

22   your client, and I appreciate how unfortunate it is that

23   under my approach, it means he's going to spend at a

24   minimum, a weekend in jail.

25          On the other hand, I kind of view that request in

*20-30270; USA v. DAMONE KEITH ADAMS*

1    light of the whole -- well, for me to do would really be

2    to place kind of form over substance in this situation,

3    and to kind of dictate a result that I want, and

4    circumventing the process, and I don't do that, even if it

5    is something that I really want, and something that I

6    really think, you know, what should happen.  If that's not

7    what's, you know, right under the rules and procedures,

8    then I'm not going to do it.

9         And I just think what I wanted to see was, okay,

10    what's really going on here?  What's the basis for the

11    request for the day?  What is the string of the

12    reasonableness of the request, and I think Ms. Brown did

13    what I asked.  She went and talked to her colleagues.  She

14    got some additional information, and so that really just

15    satisfied me about her request to hold the detention

16    hearing on Monday.

17         So that's all I'm doing, entering an order of

18    temporary detention.  Holding the defendant until Monday.

19    Granting the government's motion to have the one business

20    day to prepare, and I think it will allow the defendant to

21    fully prepare as well, and put his best foot forward with

22    the hearing.

23             **MR. THOLEN:**  I understand, you Honor.

24             **THE COURT:**  Thank you.

25             **THE CLERK:**  Mr. Tholen, your client has his

*20-30270; USA v. DAMONE KEITH ADAMS*

1  hand up.

2  **THE DEFENDANT:**  I had my hand up for awhile.

3  I was just letting you guys know when I called down to

4  that office, the lady -- Danny told me specifically to

5  turn myself in.  If I turn myself in, North Dakota will

6  move to detain me due to COVID, that I would probably be

7  safer there.  That was his exact words.  If I'm not

8  mistaken, Danny told me he emailed the people.  That's

9  what Danny told me, and I'm probably sure I could get

10  those emails.

11  When I called down there, the lady told me that

12  the supervisor would get ahold of me, and I never received

13  a phone call ever.

14  My problem isn't with the charges or -- I'm sorry,

15  sir.  I apologize.  I'm just trying to speak with you.

16  **THE COURT:**  You don't have to apologize.  I

17  want you to be able to fully present those arguments, and

18  it's -- right now it's 3:00 -- almost 3:00.  So I just

19  think also it is -- as much as I don't want to see you sit

20  in jail over the weekend, which is what is going to

21  happen, I would rather you sit in jail over the weekend,

22  which will allow you to put your best foot forward, have

23  all of this evidence that you are referring to, give your

24  attorney an opportunity to speak with you about all of it,

25  track it all down, and then you will present that on

*20-30270; USA v. DAMONE KEITH ADAMS*

1    Monday.  And I don't take it lightly that it means you'll

2    be in jail for two days, but it is better than --

3              **THE DEFENDANT:**  It's not about the two days,

4    your Honor.  It's really, like I was telling the pretrial

5    agent and my lawyer, I just had my first child.  My

6    birthday is Sunday.  Like, this stuff is just getting

7    started, like a few of these people on this list is being

8    picked up, already.  I don't want to go through the

9    proceeds with my son.  You get what I'm saying?

10             Like I say, this is probably the only birthday

11   he's going to spend with me.  Me, him and my dad, we all

12   got the same names.  It's kind of an important thing to

13   me.  That's what I was telling the lawyer and Pretrial

14   Services.

15             I'm not a flight risk.  I'm not going anywhere.  I

16   stay in the same house that I've always lived in.  I've

17   been to college.  I don't do anything violent.  I never

18   seen any guns or any of that weird stuff.  I know what's

19   going on in the city right now.  I don't have anything to

20   do with none of that.

21             I keep to myself.  I stay with my family and my

22   child.  My child's car seat is in the back car of my car

23   seat.  It's there all day everyday, because literally

24   because of this -- you get what I'm saying?  I just

25   preparing for the worst or whatever, and this probably

*20-30270; USA v. DAMONE KEITH ADAMS*

1    will be the only birthday I actually get to spend with the

2    little guy, you get what I'm saying, besides seeing behind

3    the glass or something.

4            **THE COURT:**  I don't know.  I don't know, sir.

5    You are presumed innocent.  Right now I treat you like

6    that.  There are certain results that apply.

7            **THE DEFENDANT:**  I understand.

8            **THE COURT:**  The government has rights just

9    like you have rights, and I'm just trying to respect

10   everybody's rights and reach -- take an approach that I

11   think allows you your best opportunity to advocate for

12   yourself, to meet with the attorney, have your attorney

13   advocate for you.

14           So I appreciate everything that you said.  My

15   ruling will stay the same.  It will be an order of

16   temporary detention.  You'll be back Monday at 1:00.

17           And again just in closing, I really hope counsel

18   can figure out a way to come to a consensus about a

19   resolution.  It sure seems like that this is one where you

20   should be able to do that.

21           Thank you.

22

23               (Proceedings concluded.)

24

25                     -    -    -


                 *20-30270; USA v. DAMONE KEITH ADAMS*

1          **C E R T I F I C A T I O N**

2              I, Ronald A. DiBartolomeo, official court

3      reporter for the United States District Court, Eastern

4      District of Michigan, Southern Division, appointed

5      pursuant to the provisions of Title 28, United States

6      Code, Section 753, do hereby certify that the foregoing is

7      a correct transcript of the proceedings in the

8      above-entitled cause on the date hereinbefore set forth.

9              I do further certify that the foregoing

10     transcript has been prepared by me or under my direction.

11

12     s/Ronald A. DiBartolomeo                __August 17, 2020_
       Ronald A. DiBartolomeo, CSR                    Date
13     Official Court Reporter

14                            -   -   -

15

16

17

18

19

20

21

22

23

24

25

*20-30270; USA v. DAMONE KEITH ADAMS*